## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

KIM BERNUCHAUX                                   CIVIL ACTION

VERSUS                                           NO. 12-2813

BURL CAIN, WARDEN                                SECTION "I" (2)

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record,[1] I have determined that a federal evidentiary hearing is unnecessary. <u>See</u> 28 U.S.C. § 2254(e)(2).[2] For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1]The state court record consists of a total of 7 volumes, identified as State Rec. Vols. 1-7.

[2]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily man determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

## I.   STATE COURT FACTUAL AND PROCEDURAL BACKGROUND

Petitioner, Kim Bernuchaux, was charged by amended grand jury indictment with six counts of indecent behavior with a juvenile in violation of La. Rev. Stat. §14:81.[3] After a jury trial in the 23rd Judicial District Court on July 22- 23, 2009, he was found guilty as charged.[4]  The Louisiana First Circuit Court of Appeal summarized the facts of the case as proven at trial as follows:

> On July 29, 2007, Leslie Breaux called the Assumption Parish Sheriff's office and advised detectives that her son, T.B., age thirteen, had informed her that while he was sleeping at defendant's residence, defendant put his hands in his pants and touched his penis and buttocks. An investigation ensued, and the child reiterated the allegations to a child forensic interviewer at the Children's Advocacy Center.  The interview with T.B. was audiotaped and videotaped.
>
> In the course of the investigation, detectives discovered five other children making similar allegations against defendant. The investigation revealed that defendant would invite boys who did not have a stable home to live with him. He would allegedly sleep in the same bed as these prepubescent boys, who would awaken to discover defendant fondling them. It was also asserted that he would regularly ask to see their penises to determine if they were "hard." Additionally, it was claimed that defendant would require the boys to allow him to bathe them and he would touch them during their baths. Defendant allegedly engaged in the described behavior with different children starting around 1989 and continuing until 2007.[5]

---

[3]The original indictment included eight counts of indecent behavior with a juvenile and one count of molestation of a juvenile. Before trial, Counts 6 & 7 were severed and the State nolle prossed Count 9 (molestation of a juvenile). See State Rec. Vol. 1 of 7, Minute Entry, July 22, 2009.

[4]State Rec. Vol. 1 of 7, Verdict forms.

[5]State v. Bernuchaux, 46 So.3d 284 (Table), 2010 WL 3526517 (La. App. 1st Cir. 9/10/10) (unpublished).

Bernuchaux's motion for new trial was denied on August 3, 2009.[6]   He was sentenced to seven (7) years at hard labor as to each of Counts 1, 3 and 4.   On Counts 2, 5 and 6, he was sentenced to twenty-five (25) years at hard labor per count.   All sentences were ordered served consecutively and without benefit of probation, parole or suspension of sentence.[7]

On April 16, 2010, Bernuchaux filed a direct appeal asserting the following claims: (1) the trial court erred in denying his motion to sever the offenses; (2) the trial court erred in admitting audiotapes and videotapes of interviews conducted with each of the complainants; and (3) errors patent review under La. Code Crim. P. art. 920 (2).

On September 10, 2010, the Louisiana First Circuit Court of Appeal affirmed his convictions and sentences.[8]  Bernuchaux's conviction became final thirty (30) days later, on Monday, October 11, 2010, the first business day thereafter, because he did not appeal or seek reconsideration of his affirmed conviction or his sentence.  Roberts v. Cockrell, 319 F.3d 690, 694-95 (5th Cir. 2003) (under federal habeas law, a conviction is final when the state defendant does not timely proceed to the next available step in the state

---

[6]State Rec. Vol. 1 of 7, Motion for New Trial filed 7/29/09 and denied 8/3/09.

[7]State Rec. Vol. 4 of 7, Transcript of Sentencing, 11/17/09; State Rec. Vol. 1 of 7, Reasons for Sentencing, 11/17/09.

[8]State v. Bernuchaux, 46 So.3d 284 (Table), 2010 WL 3526517 (La. App. 1st Cir. 9/10/10) (unpublished).

appeal process); <u>see</u> <u>Cousin v. Lensing</u>, 310 F.3d 843, 845 (5th Cir. 2002) (petitioner's guilty pleas became final at the end of the period for filing a notice of appeal under La. Code Crim. P. art. 914[9]).

On September 16, 2011, Bernuchaux filed a Uniform Application for Post-Conviction Relief with the trial court, asserting four claims: (1) Trial counsel was ineffective in failing to (a) engage in adequate pre-trial investigation and defense, including failing to educate the jury on the doctrine of <u>in</u> <u>loco</u> <u>parentis;</u> (b) object to the State's use of "highly prejudicial" photographs which inflamed the jury, (c) call defense witnesses to testify favorably for petitioner; and (d) request a change of venue to protect his right to a fair trial.  (2) Appellate counsel was ineffective in failing to (a) raise a claim of excessiveness of  sentence and (b) challenge the denial of severance on appeal. (3) His trial was tainted by juror misconduct. (4) The statute under which he was convicted, La. Rev. Stat. §14:81, was unconstitutionally vague.[10]

_____

[9]The <u>Cousin</u> court recognized that the failure to move timely for appeal under La. Code Crim. P. art. 914 renders the conviction and sentence final at the expiration of that period citing <u>State v. Counterman</u>, 475 So.2d 336, 338 (La. 1985).  At the time of <u>Cousin</u>, La. Code Crim. P. art. 914 required that a criminal defendant move for leave to appeal within five (5) days of the order or judgment being appealed or of a ruling on a timely motion to reconsider a sentence.  Article 914 was later amended by La. Acts 2003, No. 949, § 1 to provide thirty (30) days for filing of the notice of appeal.

[10]State Rec. Vol. 4 of 7 contains a copy of the state post-conviction application.

The trial court conducted a hearing on the post-conviction claims on January 17, 2012,[11] and denied the application in a judgment on January 31, 2012.[12]   On February 29, 2012, Bernuchaux filed his writ application in the Louisiana First Circuit.[13]   The appellate court denied the application on April 23, 2012.[14] On May 14, 2012, he filed a request for review of this decision in the Louisiana Supreme Court,[15] which denied it on November 21, 2012.[16]

## II.   **FEDERAL HABEAS PETITION**

Through counsel, Bernuchaux filed the instant petition for federal habeas corpus relief in this court on November 23, 2012, asserting the following claims: (1) He received ineffective assistance of <u>trial</u> counsel when his counsel failed to (a) educate the jury on the doctrine of <u>in</u> <u>loco</u> <u>parentis</u> as part of his defense; (b) object to the introduction of prejudicial photographs; (c) seek a change of venue; and (d) call defense witnesses who

---

[11]State Rec. Vol. 5 of 7 contains a copy of the transcript of the state post-conviction hearing.

[12]State Rec. Vol. 5 of 7 contains a copy of this judgment.

[13]State Rec. Vol. 5 of 7 contains a copy of the writ application, stamped as filed February 29, 2012.

[14]State Rec. Vol. 5 of 7 contains a copy of this unpublished decision, <u>State v. Bernuchaux</u>, 12-KW-0343 (La. App. 1st Cir., April 23, 2012).

[15]State Rec. Vol. 5 of 7 contains a copy of a letter from the Louisiana Supreme Court confirming the filing date of Writ No. 2012-KP-1089; State Rec. Vol. 5 of 7 contains a copy of the writ application seeking review from the Louisiana Supreme Court.

[16]<u>State ex rel. Kim Bernuchaux</u>, 102 So.3d 52 (La. 11/21/12). A copy of this ruling is located in State Rec. Vol. 5 of 7.

would have corroborated the defense theory and refuted the State's theory of the case.

(2) He received ineffective assistance of <u>appellate</u> counsel when his counsel failed to (a)

raise the excessiveness of his sentence, and (b) more forcefully argue that the trial court

erred in denying a severance.  (3) Juror misconduct occurred when a petit juror failed to

disclose her familiarity and prior relationship with Bernuchaux, thus prejudicing his right

to a fair and impartial jury. (4) La. Rev. Stat. §14:81 is unconstitutionally vague.

The State filed a response arguing that petitioner failed to exhaust his state court

remedies as to his claim that La. Rev. Stat. §14:81 is unconstitutionally vague and that

his other claims are without merit.  Through his counsel, Bernuchaux filed a reply to the

state's response,[17] arguing, among other things, that all of his claims have been exhausted

in the state courts.

## III.   <u>FEDERAL HABEAS STANDARDS OF REVIEW</u>

The AEDPA comprehensively revised federal habeas corpus legislation, including

28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[18] and applies to

habeas petitions filed after that date.  <u>Flanagan v. Johnson</u>, 154 F.3d 196, 198 (5th Cir.

1998) (<u>citing</u> <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997)).  The AEDPA therefore applies to

---

[17]Record Doc. No. 12.

[18]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. <u>United States v. Sherrod</u>, 964 F.2d 1501, 1505 (5th Cir. 1992).

Bernuchaux's petition, which was filed, with counsel, in this federal court on November 23, 2012.[19]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State does not contend that the petition is time-barred, and I find that it is timely.  28 U.S.C. 2244(d)(1).  The State asserts, however, that at least one of petitioner's claims is not exhausted in the state courts.[20]

## IV.  EXHAUSTION AND PROCEDURAL DEFAULT

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." Whitehead v. Johnson, 157 F.3d 384, 387 (5th Cir. 1998) (citing Rose v. Lundy, 455 U.S. 509, 519-20 (1982)); accord Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); Johnson v. Cain, 712 F.3d 227 (5th Cir. 2013); Morris v. Dretke, 413 F.3d 484, 490 (5th Cir. 2005); Nobles, 127 F.3d 409, 419 (5th Cir. 1997).  "A federal habeas petition should be

---

[19]Record Doc. No. 1.

[20]Record Doc. No. 10.

dismissed if state remedies have not been exhausted as to <u>all</u> of the federal court claims." <u>Whitehead</u>, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); <u>Rose</u>, 455 U.S. at 519-20) (emphasis added).

"The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the <u>highest</u> state court." <u>Id.</u> (citing <u>Picard v. Connor</u>, 404 U.S. 270, 275-78 (1971)) (emphasis added). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999); <u>accord</u> <u>Duncan v. Walker</u>, 533 U.S. 167, 177-79 (2001).

"A federal court claim must be the "substantial equivalent" of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." <u>Whitehead</u>, 157 F.3d at 387 (citing <u>Picard</u>, 404 U.S. at 275-78). "This requirement is not satisfied if the petitioner presents <u>new legal theories</u> or <u>new factual claims</u> in his federal application." (emphasis added) <u>Id.</u> (citing <u>Nobles</u>, 127 F.3d at 420) It is not enough for a petitioner to have raised the claims in the lower state courts if the claims were not specifically presented to the Louisiana Supreme Court. <u>Baldwin v. Reese</u>, 541 U.S. 27, 32 (2004) (a

prisoner does not fairly present a claim to a state court if that court must read beyond a petition or brief, such as a lower court opinion, to find the claim).

The state court record establishes that Bernuchaux first challenged the constitutionality of La. Rev. Stat. §14:81 in his post-conviction application filed on September 16, 2011, when he argued that the statute was unconstitutionally "vague" and violated the "due process clauses of the United States Constitution, amend. XIV, and the Louisiana Constitution, art. I, §§ 2 and 13."[21]

When the trial court denied relief, he asserted the same vagueness challenge in the Louisiana First Circuit.[22] When that application was denied on April 23, 2012, Bernuchaux sought review in the Louisiana Supreme Court, again arguing that La. Rev. Stat. §14:81 was unconstitutionally vague.[23] All three levels of the state courts entered judgments denying relief without providing written reasons.[24]

Although this history indicates that Bernuchaux has exhausted state remedies, the State argues that he failed to raise the claim in a procedurally proper manner.

---

[21]State Rec. Vol. 4 of 7, Bernuchaux's state post-conviction application at p. 19 of 22.

[22]State Rec. Vol. 5 of 7, Bernuchaux's application for supervisory and/or remedial writs filed with the Louisiana First Circuit on February 29, 2012.

[23]State Rec. Vol. 5 of 7, Petitioner's application in the Louisiana Supreme Court for "Writ of Certiorari" filed May 14, 2012.

[24]Although the trial court noted some reasons for denial during the hearing held in state court, no specific argument was made nor were any reasons provided by the court for denying relief on the claim that La. Rev. Stat. §14:81 was unconstitutionally vague or overbroad.

Specifically, the State asserts that Bernuchaux failed to "properly initiate a constitutional challenge" under La. Rev. Stat. §13:4448, which requires notice to the state attorney general.[25]  This appears to be an argument that Bernuchaux's constitutionality claim is barred from federal habeas review under the procedural default doctrine.  A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer "available" to him. See 28 U.S.C. § 2254(b); Coleman v. Thompson, 501 U.S. 722, 732, citing Engle v. Isaac, 456 U.S. 107, 125-126, n. 28 (1982). Thus, I find that Bernuchaux's challenge to the constitutionality of La. Rev. Stat. §14:81 is exhausted, and the State's arguments in this regard must instead be evaluated under procedural default law.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment. Coleman v. Thompson, 501 U.S. 722, 729-30; Glover v. Cain, 128 F.3d 900, 902 (5th Cir.1997); Amos v. Scott, 61 F.3d 333, 338 & n.10 (5th Cir.1995) (citing Harris v. Reed, 489 U.S. 255, 260, 262 (1989)). This "independent and adequate state-law" doctrine applies to

---

[25]La. Rev. Stat. §13:448 provides: "Prior to adjudicating the constitutionality of a statute of the state of Louisiana, the courts of appeal and the Supreme Court of Louisiana shall notify the attorney general of the proceeding and afford him an opportunity to be heard. The notice shall be made by certified mail. No judgment shall be rendered without compliance with the provisions of this Section; provided where the attorney general was not notified of the proceeding, the court shall hold adjudication of the case open pending notification of the attorney general as required herein."

both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review. Amos, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim in a habeas petition unless the last state court to render a judgment in the case has "clearly and expressly" indicated that its judgment is independent of federal law and rests on a state procedural bar. Amos, 61 F.3d at 338; Harris, 489 U.S. at 263; Glover, 128 F.3d at 902. When the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion. Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991).

For a state law procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate. A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar. Amos, 61 F.3d at 338. To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. Walker v. Martin, __U.S.__, 131 S.Ct. 1120, 1127 (2011); Glover, 128 F.3d at 902. A state procedural rule "can be 'firmly established' and 'regularly followed,' - even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." Beard v. Kindler,

- 11 -

__U.S.__, 130 S. Ct. 612, 618 (2009).  The question of the adequacy of a state procedural bar is itself a federal question.  <u>Beard</u>, 130 S. Ct. at 617 (<u>citing</u> <u>Lee v. Kemna</u>, 534 U.S. 362, 375 (2002)).

In this case, the last state court to address petitioner's challenge to the constitutionality of La. Rev. Stat. §14:81 was the Louisiana Supreme Court.  <u>State v. Bernuchaux</u>, 102 So.3d 52 (2012).  However, <u>none</u> of the state courts ever identified any procedural bar to Bernuchaux's constitutionality claim.  Without such a 'clear and express" indication of procedural bar in the state courts, <u>Amos</u>, 61 F.3d at 338, I find that the claim has <u>not</u> been  procedurally defaulted and should be addressed on the merits.[26]

## V.   <u>STANDARDS OF MERITS REVIEW</u>

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  <u>Nobles</u>, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the

---

[26]The arguments asserted by the parties regarding the "correct" application of Louisiana procedural rules are not matters for a federal habeas court to determine. "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991). A federal court conducting habeas review is limited to determining whether a petitioner's custody is in violation of the Constitution, laws, or treaties of the United States. <u>See</u> 28 U.S.C. § 2254(a); <u>Estelle</u>, 502 U.S. at 68; <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1982).

State court proceeding.'" Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1); Green v Thaler, 699 F.3d 404, 411 (5th Cir. 2012); Holland v. Anderson, 583 F.3d 267, 272 (5th Cir. 2009).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

- 13 -

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000); Penry, 532 U.S. at 792-93;

Hill, 210 F.3d at 485. "'A federal habeas court may not issue the writ simply because

that court concludes in its independent judgment that the state court decision applied [a

Supreme Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting

Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone,

535 U.S. 685, 699 (2002). Rather, under the "unreasonable application" standard, "the

only question for a federal habeas court is whether the state court's determination is

objectively unreasonable." Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert.

denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to

show that the state court applied the precedent to the facts of his case in an objectively

unreasonable manner. Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25);

Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

## VI.    INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL (CLAIM NO. 1)

Bernuchaux argues that he received ineffective assistance from his trial counsel.

The issue of ineffective assistance of counsel is a mixed question of law and fact.

Woodfox v. Cain, 609 F.3d 774, 789 (5th Cir. 2010); Richards v. Quarterman, 566 F.3d

553, 561 (5th Cir. 2009). Thus, the question before this court is whether the state courts'

denial of relief was contrary to or an unreasonable application of United States Supreme

Court precedent. 28 U.S.C. § 2254(d)(1).

The standard for judging performance of counsel was established by the United States Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), which set a two-part test for evaluating claims of ineffective assistance of counsel, requiring proof of <u>both</u> deficient performance and resulting prejudice. <u>Strickland</u>, 466 U.S. at 697. First, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." <u>Id</u>. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id</u>. at 694;  <u>United States v. Kimler</u>, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive <u>Strickland</u> standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. <u>Kimler</u>, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.'  But it is not enough under <u>Strickland</u>, 'that the errors had some conceivable effect on the outcome of the proceeding.'" <u>Motley v. Collins</u>, 18 F.3d 1223, 1226 (5th Cir.), <u>cert</u>. <u>denied</u>, 513 U.S. 960 (1994) (quoting <u>Strickland</u>, 466 U.S. at 693).

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical

decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." Strickland, 466 U.S. at 689-90.  In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. Strickland, 466 U.S. at 689; Neal v. Puckett, 286 F.3d 230, 236-37 (5th Cir.), cert. denied, 537 U.S. 1104 (2002); Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001).

On habeas review, the United States Supreme Court has recently clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom."  Harrington v. Richter, __ U.S. __, 131 S.Ct. 770, 788 (2011).  The Harrington Court went on to recognize the high level of deference owed to a state court's findings under Strickland in light of the AEDPA:

> The standards created by Strickland and § 2254(d) are both "highly deferential", and when the two apply in tandem, review is "doubly" so. The Strickland standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Id. (citations omitted).

"A court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." Bell v. Cone, 535 U.S. 685, 702 (2002) (citing Strickland, 466 U.S. at 689). This court must apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 690. Federal courts have consistently recognized that tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir.), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)). Federal habeas courts must presume that trial strategy is objectively reasonable unless clearly proven otherwise. Strickland, 466 U.S. at 689. The burden is on petitioner to demonstrate that counsel's strategy was constitutionally deficient. Id.

Bernuchaux first complains that his trial counsel failed to educate the jury on the doctrine of in loco parentis as part of his trial defense.[27] Essentially, Bernuchaux

---

[27]Under Louisiana law, the term " in loco parentis" means in the place of a parent, and a "person in loco parentis" may be defined as one who has assumed the status and obligations of a parent without formal adoption. State v. Bradford, 259 La. 381, 250 So.2d 375 (1971).

contends that the conduct for which he was convicted was not criminal activity, but rather ordinary parenting behavior for a caretaker of young boys.  He argues that his counsel's failure to assert in loco parentis deprived him of a defense which could have provided the jury with an "alternative theory of innocence." [28]

This claim was made during state court post-conviction proceedings. No written or oral reasons were given by the state courts for the denial of this claim.

Under Strickland, "'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" Knowles v. Mirzayance, 556 U.S. 111 (2009)(quoting Strickland, 466 U.S. at 691.)  Because "every effort [must] be made to eliminate the distorting effects of hindsight," Strickland, 466 U.S. at 689, a "conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." Pape v. Thaler, 645 F.3d 281, 291 (5th Cir. 2011);  Richards, 566 F.3d at 564. "At the same time, however, courts are 'not required to condone unreasonable decisions parading under the umbrella of strategy, or to fabricate tactical decisions on behalf of counsel when it appears on the face of the record that counsel made no strategic decision at all.'"  Richards, 566 F.3d at 564 (citation omitted).

---

[28]Record Doc. No. 1-1 at pp. 15-16, Memorandum in Support of Petition.

The record establishes that Bernuchaux's trial counsel was knowledgeable about the facts and vigorously cross-examined the State's witnesses in a substantial effort to discredit Bernuchaux's accusers at trial by undermining their credibility. Counsel emphasized that the victims had not reported the crime[29] and that Bernuchaux never told them to keep their activities secret.[30]   He pointed out numerous possible motives for revenge or bias that each of the victims harbored.[31] Counsel  inquired about one of the victim's prior sexual abuse by a parent, drug habits, prior inconsistent statements made, and past criminal activity.[32]   He also presented an affirmative defense through the testimony of three other boys who had lived with or spent significant time with Bernuchaux, but who each denied that any molestation or sexually inappropriate conduct ever occurred.[33]

---

[29]State Rec. Vol. 3 of 7, Trial Transcript, Testimony of W.S. at pp. 235-36; Testimony of T.B. at p. 248; Testimony of S.S. at p. 264; Testimony of J.L. at p. 294; Testimony of S.B. at p. 309.

[30]State Rec. Vol. 3 of 7, Trial Transcript, Testimony of W.S. at p. 238; Testimony of T.B. at p. 253;  Testimony of S.S. at p. 265; Testimony of J.L. at p. 294.

[31]State Rec. Vol. 3 of 7, Trial Transcript, Testimony of W.S. at pp. 234-35; Testimony of T.B. at pp. 252-54; Testimony of J.L. at pp. 292-93; Testimony of S.B. at p. 307; Testimony of M.B at pp. 326-27.

[32]State Rec. Vol. 3 of 7, Trial Transcript, Testimony of W.S., at pp. 237-38; Testimony of S.B. at pp. 306-10 and Testimony of M.B. at pp. 321-22; Testimony of S. S. at p. 260 and Testimony of M.B. at pp. 324-25.

[33]State Rec. Vol. 3 of 7, Trial Transcript, Testimony of Nicholas Bourgeois at pp. 332-36; Testimony of Eric Guillot at pp. 349-57 and Testimony of Jarred Bourgeois at pp. 360-65. The defense also called another witness, who testified that during her daily visits to Bernuchaux's house, she had never witnessed any inappropriate activity. State Rec. Vol. 3 of 7, Trial Transcript, Testimony of Evelyn Hue at pp. 340-48. Additionally, Kim Bernuchaux testified in his own behalf. State Rec. Vol. 3 of 7,

The record also indicates that an <u>in loco parentis</u> defense would have been woefully ineffective. The victims' testimony provided numerous instances of criminally lewd conduct by Bernuchaux. This conduct included that Bernuchaux bathed one victim and expected to be bathed in return; was angered if the boy showered alone; rubbed a victim's buttocks underneath his underwear; placed his hands on a victim's penis, and demonstrated how to masturbate; and numerous other instances of sleeping with victims, groping their genitals and either suggesting or performing sexual acts.[34] These kinds of activities with young boys would have been criminal even if done by one's own parent. Thus, counsel's decision to attempt to discredit and challenge the credibility of the accusers, rather than pursue a weak <u>in loco parentis</u> defense, was sound strategy, well within the wide range of trial tactics constituting reasonable assistance. <u>Richards</u>, 566 F.3d at 564. Bernuchaux fails to establish that his trial counsel was constitutionally deficient for pursuing a strategy other than the <u>in loco parentis</u> defense.

Bernuchaux also argues that he received ineffective assistance of counsel when his trial counsel failed to object to the introduction of alleged "prejudicial" photographs, intended to inflame the jury, of each victim at his age when the crimes occurred. This

---

Trial Transcript, Testimony of Kim Bernuchaux at pp. 373-99 and State Rec. Vol. 4 of 7 at pp. 400-44.

[34]State Rec. Vol. 3 of 7, Trial Transcript, Testimony of W. S. at pp. 229-31; Testimony of T.B. at pp. 246-47; Testimony of S.S. at pp. 261-62; Testimony of J.L. at pp. 278-79; Testimony of S.B. at pp. 300-04; Testimony of M.B. at pp. 314-17.

claim was first asserted in state court post-conviction proceedings. No specific written reasons for denial of this claim were provided by any state court.

To violate due process, an evidentiary ruling must result in a "denial of fundamental fairness," and improperly admitting evidence justifies habeas relief only "if the admission was a crucial, highly significant factor in the defendant's conviction." Neal v. Cain, 141 F.3d 207, 214 (5th Cir. 1998). Under Louisiana law, photographs are generally admissible if they illustrate any act, shed any light upon an issue in the case, or are relevant to describe the person, thing or place depicted. State v. Boyer, 406 So.2d 143, 148 (La. 1981).[35] The test for admissibility is whether their probative value outweighs any prejudicial effect. Id.

To convict Bernuchaux of indecent behavior with juveniles, the State had to prove that Bernuchaux was over the age of seventeen, more than two years older than his victims and that his victims were not yet seventeen. See La. Rev. Stat. §14:81. Thus, the age of each victim at the time of the offenses was a critical element to be proven in the State's case, and the photographs assisted in establishing this fact. Bernuchaux does not state with any particularity what was objectionable about the photographs, and there is no indication in the record that they were misleading, inaccurate, improper, unduly

_____

[35]At trial, each witnesses provided his date of birth, identified his own photograph and stated his approximate age in the photograph.

prejudicial or otherwise objectionable or inadmissible in any way. Thus, he fails to establish a valid basis for counsel to have objected to the photographs. Counsel's performance cannot be constitutionally deficient for failing to make a baseless objection. Miller v. Thaler, 714 F.3d 897 (5th Cir. 2013); Roberts v. Thaler, 681 F.3d 597, 611 (5th Cir. 2012); Sones v. Hargett, 61 F.3d 410 (5th Cir. 1995); Koch v. Puckett, 907 F.2d 527 (5th Cir. 1990).

Bernuchaux also complains that his attorney was ineffective in failing to seek a change of venue, thus depriving him of a fair trial. Bernuchaux contends that "the notoriety of Petitioner's alleged crimes, the number of counts and witnesses against him, his stature in the community, and the small, close-knit culture of Pierre Part and its environs combined to make the selection of a fair and impartial jury virtually impossible."[36] This claim was asserted before the state courts in post-conviction proceedings and was summarily denied.

To establish prejudice under Strickland, Bernuchaux must "bring forth evidence demonstrating that there is a reasonable probability that the trial court would have, or at least should have, granted a motion for change of venue if [defense] counsel had presented such a motion to the court." Meeks v. Moore, 216 F.3d 951, 961 (11th Cir. 2000). Bernuchaux cannot sustain his burden of proof.

---

[36]Record Doc. No. 1-1, Memorandum in Support of Petition at p. 18.

Under Louisiana law, a trial court must change the venue of a prosecution "when the applicant proves that by reason of prejudice existing in the public mind or because of undue influence ... a fair and impartial trial cannot be obtained in the parish where the prosecution is pending." <u>State v. Bordelon</u>, 33 So.3d 842, 866 (La. 2009) (citing La. Code Crim. P. art. 622). The court must consider whether "the prejudice, the influence, or the other reasons are such that they will affect the answers of jurors on the voir dire examination or the testimony of witnesses at the trial." <u>Id</u>. However, "the defendant must prove more than mere public knowledge or familiarity with the facts of the case to be entitled to have his trial moved to another parish; rather, the defendant must show the extent of prejudice in the minds of the community as a result of such knowledge or exposure to the case before trial." <u>Bordelon</u>, 33 So.3d at 866; <u>State v. Frank</u>, 803 So.2d 1, 14–15 (La. 2001).

The Fourteenth Amendment protects a defendant's Sixth Amendment right to have his case decided by an impartial jury, <u>Irvin v. Dowd</u>, 366 U.S. 717, 722 (1961), and a defendant may request a "transfer of the proceeding to a different district . . . if extraordinary local prejudice will prevent a fair trial – a basic requirement of due process." <u>Skilling v. United States</u>, __ U.S. __, 130 S.Ct. 2896 (2010) (quotations and citation omitted.)  The Supreme Court has stated that an impartial jury, however, is not one in which the jurors must be totally ignorant of the facts and issues involved in the

- 23 -

case. Irvin, 366 U.S. at 722. "To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." Id. at 723.

Under Strickland, it is defendant's burden to "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). In this case, counsel's decision not to move for a change of venue was, apparently, tactical and reasonable under the circumstances. Kim Bernuchaux was well-known in his community for his civic and church activities. He taught religion and served on a church finance committee. He also owned several businesses in Pierre Part, including grocery, music and video stores and a restaurant.[37] Sound strategy dictated that trial should be held in the community where Bernuchaux's positive civic and church activities were known.

Bernuchaux offers no evidence to establish prejudice under Strickland. He fails to demonstrate that any "outside influence," such as media coverage or pretrial publicity, was so pervasive and inherently prejudicial that an unbiased jury pool could not have

---

[37]See State Rec. Vol. 3 of 7, Trial Transcript, Testimony of Kim Bernuchaux at pp. 373-75; Testimony of Father Waguespack at p. 370.

been assembled in his community.  Nor does he offer evidence to show that the publicity and notoriety of the case actually prejudiced his jury selection process.[38]

The transcript of jury voir dire in this case reveals that of 63 potential jurors examined (three panels of 21 each), only 12 (less than 20 percent) indicated that they had heard or already knew something about the case.[39] All but three were ultimately struck from the jury panel for "cause." The other three were subsequently excused when the State exercised one peremptory challenge and the defense used two.[40] Thus, none of the jurors who served at the trial had outside knowledge of the case.

In addition, the fact that only six (6) (less than 10 percent) of the prospective members of the jury panel indicated they had any preconceived opinions of guilt or innocence[41] indicates that a fair trial could be held in Assumption Parish. See Murphy

_____

[38]See Skilling, – U.S. –, –, 130 S.Ct. 2896, 2913-2918 (2010). Skilling sets forth several factors to be considered regarding whether pretrial publicity may warrant a change of venue, including: (1) the size and characteristics of the community where the crime occurred; (2) the nature of the news stories regarding the defendant and the crime; (3) the length of time between the alleged crime and the trial itself; and (4) the jury's treatment of the defendant at trial. Other than to note the small community where the crimes occurred, petitioner advances no argument regarding the Skilling factors.

[39]Jurors Simoneaux, Sedotal, Verrett, Breaux, Crochet, Hebert, Templet, Cavalier, Richard, Alleman, and Rivere and Hue indicated they had heard information about the case before being called for jury duty. State Rec. Vol. 2 of 7, Trial Transcript at pp. 62-68, pp. 93-96 and 146.

[40]State Rec. Vol. 2 of 7, Trial Transcript at pp. 2-5.  The state struck juror Sedotal and the defendant struck jurors Crochet and Cavalier.

[41]During voir dire, jurors Verrett, Breaux, Rivere, D. Richard, Templet and Hue indicated they had formed opinions about the case or heard information that they could not put aside in rendering a verdict. All were dismissed for cause.  State Rec. Vol. 2 of 7, Trial Transcript at pp. 64-5, 93, 96, 115-16, 146.

v. Florida, 421 U.S. 794, 803 (1975) (that 26 percent of venire was excused because of preconceived opinion about defendant's guilt does not suggest that community sentiment is poisoned against him.)

Bernuchaux's argument that the trial court exhausted three panels of jurors during jury voir dire and had to request that sheriff's deputies pick up additional potential jurors in order to have sufficient jurors to hear his case is also unavailing.[42] Although the "length to which the trial court must go in order to select jurors who appear to be impartial" is one factor to consider in evaluating jurors' impartiality, Murphy, 421 U.S. at 802-03, the questioning of three panels alone is insufficient to show that counsel should have requested a different trial venue. Moreover, transcript of the voir dire shows that the court was able to select 12 jurors and one alternate without considering any of the additional prospective jurors that the Sheriff was ordered to find.[43]

Bernuchaux fails to establish that any of the jurors selected for his trial were unable to remain fair and impartial as a result of any outside influence. Thus, he fails to establish "prejudice" due to counsel's failure to request a change of venue. In the absence of showing prejudice under Strickland, he cannot show that the state court's decision was clearly contrary to Supreme Court law.

---

[42]Record Doc. No. 1-1, Memorandum in Support of Petition at p. 21-22.

[43]State Rec. Vol. 2 of 7, Trial Transcript, pp. 159-170. See also, State Rec. Vol. 5 of 7, Transcript of Proceeding, January 17, 2012 at p. 15.

Bernuchaux also claims that his attorney was ineffective for failing to call defense witnesses Father Clarence Waguespack, Danielle Fuller and Chester Pipsair. To prevail on an ineffective assistance claim based upon uncalled witnesses, a habeas petitioner must name the witness, demonstrate that the witness would have testified, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable. Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir.1985). Claims of uncalled witnesses are disfavored, especially if the claim is unsupported by evidence indicating the witnesses's willingness to testify and the substance of the proposed testimony.  Harrison v. Quarterman, 496 F.3d 419, 428 (5th Cir. 2007). The decision whether to present a witness is considered to be essentially strategic, and questioning such a decision is disfavored, as "speculations as to what [uncalled] witnesses would have testified is too uncertain." Alexander, 775 F.2d at 602.

Petitioner raised this claim in his state court post-conviction proceedings.  After a hearing, the trial court denied relief.  As to one uncalled witness, Father Waguespack, the trial court specifically found that counsel had strategically chosen to put the witness on the stand to avoid calling the defendant to testify. When Father Waguespack was not allowed to give hearsay testimony, counsel chose instead to put Bernuchaux on the stand.

- 27 -

Thus, the state court concluded that counsel made a strategic choice regarding the order of witnesses and how Waguespack was examined.[44]

Bernuchaux offered the affidavits of Father Waguespack, Fuller and Pipsair as attachments to his federal habeas petition in support of this claim.[45]  The following is a summary of each:

> Statement of Father Clarence Waguespack: Bernuchaux was an active member of St. Joseph the Worker Catholic Church and taught faith classes. Some of his pupils were children.  Bernuchaux spoke to Waguespack regarding disciplinary problems he had with the children in his care before these allegations were made against him. He also discussed Bernuchaux's missing coin collection with Bernuchaux before the victims made their allegations.

> Statement of Danielle Fuller: She was Bernuchaux's employee for three years. She made social visits to Bernuchaux's home throughout her childhood and played with other children there. She never witnessed behavior or activity that would cause her any concern about Bernuchaux's ability to care for the children in his care. Fuller never saw victim J.L. at Bernuchaux's residence. S.B., another victim, admitted to her that he had stolen Bernuchaux's personal property. S.B.'s statement was made to her before making any criminal allegation against Bernuchaux.

> Statement of Chester Pipsair:  Pipsair was a neighbor of Kim Bernuchaux for many years. He witnessed children being dropped off voluntarily to the Bernuchaux home but never discussed the children when Bernuchaux would visit him.  He never had any reason to suspect that unlawful activity was occurring at Bernuchaux's home.

---

[44]State Rec. Vol. 5 of 7, Transcript of Proceedings, January 17, 2012 at pp. 11-12.

[45]Record Doc. No. 1-3 at pp. 41, 43 and 45.

As to Waguespack, who was clearly available and did testify at trial,[46] both the trial transcript and the affidavit support the state court's determination that counsel made a reasonable strategic decision not to pursue his testimony but instead to call Bernuchaux to the stand. The only testimony not able to be offered by Waguespack at trial was his statement that Bernuchaux told him about disciplinary problems with some of the victims <u>before</u> the allegations of sexually inappropriate conduct occurred. However, Waguespack's statement contained no specifics as to which victims Bernuchaux may have discussed with him. Additionally, other testimony from several witnesses was offered at trial that Bernuchaux was having disciplinary problems with some of the victims before the accusations of sexual misconduct were made.[47] Bernuchaux himself also took the stand and testified about the problems he was having with various victims before the accusations were made against him.[48] Thus, Waguespack's proposed testimony that Bernuchaux had complained about the problems he had with victims before he was accused of crimes would have been merely cumulative and duplicative. Bernuchaux

---

[46]State Rec. Vol. 3 of 7, Trial Transcript, Testimony of Father Waguespack at 370-72.

[47]State Rec. Vol. 3 of 7, Trial Transcript, Testimony of W.S. at pp. 234-35;Testimony of S.B. at pp. 307-08; Testimony of Jarred Bourgeois at p. 364.

[48]See e.g., State Rec. Vol. 3 of 7, Trial Transcript, Testimony of Kim Bernuchaux at pp. 383, 386-93, 397-98, 400-44.

cannot establish that Waguespack's testimony would have resulted in a favorable outcome at trial and fails to establish the requisite <u>Strickland</u> prejudice.

As to Fuller, no evidence has been offered to show that she was available to testify at trial or would have testified. <u>Alexander</u>, 775 F.2d at 602. Additionally, since most of the sexual activity alleged by the victims occurred during bath and bedtime, the fact that Fuller never witnessed any sexual activity during the hours she was at Bernuchaux's residence does not negate the victim's claims. Her potential testimony that S.B. admitted to Fuller that he stole from Bernuchaux before the allegations against him is merely cumulative, since S.B. conceded that point at trial.[49]

Finally, as to Pipsair's proposed testimony, no evidence is offered that he was available to testify at trial and would have testified if called by the defense. Additionally, the fact that Pipsair, a neighbor of Bernuchaux's, never had any reason to suspect that illegal sexual activity was taking place at Bernuchaux's residence behind closed doors, is insufficient to be considered "favorable" evidence. There is no indication that he visited the home, particularly at hours when such activities were alleged to be taking place, and no indication that he ever interacted with the victims.

In sum, none of the proposed testimony of uncalled witnesses could be considered so favorable as to alter the outcome at trial. <u>Strickland</u> requires a federal habeas

---

[49]State Rec. Vol. 3 of 7, Trial Transcript, Testimony of S.B. at pp. 307-08.

petitioner to prove <u>both</u> deficient performance and resulting prejudice. 466 U.S. at 697. In this case, Bernuchaux has failed to show that counsel's decision not to call these witnesses was an unreasonable trial strategy and also failed to show that he was prejudiced by counsel's strategy. Therefore, the state courts' decision to deny relief on this claim was not contrary to or an unreasonable application of clearly established Supreme Court precedent. 28 U.S.C. § 2254 (d)(1).

## VII.   INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL (CLAIM NO. 2)

Bernuchaux also argues that his <u>appellate</u> counsel was ineffective.  Persons convicted of a crime are entitled to effective assistance of counsel in their first appeal of right. <u>Evitts v. Lucey</u>, 469 U.S. 387, 394 (1985).  The <u>Strickland</u> standard applies to claims of ineffective appellate counsel.  <u>Goodwin v. Johnson</u>, 132 F.3d 162, 170 (5th Cir. 1998).  Effective appellate counsel are not required to raise every non-frivolous available ground for appeal.  <u>Green v. Johnson</u>, 160 F.3d 1029, 1043 (5th Cir. 1998) (<u>citing</u> <u>Evitts</u>, 469 U.S. at 394).  Because one of appellate counsel's important duties is to focus on those arguments that are most likely to succeed, counsel will not be held to be ineffective for failure to raise every conceivable issue. <u>Smith v. Robbins</u>, 528 U.S. 259, 288 (2000); <u>Jones v. Barnes</u>, 463 U.S. 745, 754 (1983).  Under <u>Strickland</u>, Bernuchaux must show <u>both</u> that his counsel's performance was unreasonably deficient on appeal <u>and</u> that he was prejudiced. <u>Smith</u>, 528 U.S. at 285.  Bernuchaux cannot meet this demanding test.

Bernuchaux argues that his appellate counsel (a) failed to challenge the excessiveness of his 96-year sentence, and (b) made only "superficial arguments concerning severance."[50]  The two claims briefed on appeal were whether the trial court's failure to grant a defense pre-trial motion to sever was error and whether the court improperly admitted video-taped testimony.  As to the excessiveness of Bernuchaux's sentence, the record shows that he received three sentences of 25 years on Counts 2, 5 and 6 and three sentences of 7 years each on Counts 1, 3 and 4, each sentence to run consecutively. He argues that the total of 96 years is excessive for a first-offender with strong community ties, who had committed no offenses while on bond, and who was acting as a "parent" to the victims.[51]

Contrary to the State's argument,[52] the record shows that trial counsel timely filed a motion to reconsider sentence in the trial court on December 1, 2009, as required by La. Code Crim. P. art. 881.1(A). The trial court denied the motion, however, on the ground that an appeal was "already filed."[53]

_____

[50]Record Doc. No. 1-1, Memorandum in Support of Petition at pp. 27.

[51]Record Doc. No. 1-1, Memorandum in Support of Petition at pp. 25-26.

[52]Record Doc. No. 11, State's Answer at pp. 17-19.

[53]State Rec. Vol. 1 of 7, Motion to Reconsider Sentence, filed December 1, 2009, and denied on December 4, 2009.

To prevail on a claim that appellate counsel was ineffective, Bernuchaux must show a reasonable probability that he would have prevailed on this issue on appeal but for his counsel's deficient representation. Brisno v. Cockrell, 274 F.3d 204, 207 (5th Cir. 2001); Smith v. Robbins, 528 U.S. at 285-86. Under Louisiana law, a conviction for a single count of indecent behavior with juveniles carries a penalty of imprisonment at hard labor for not less than two (2) nor more than twenty-five (25) years, with at least two years of the sentence to be served without the benefit of parole, probation, or suspension of sentence. Thus, Bernuchaux's per count sentences were within the range of sentences legislatively contemplated for his crimes.

Federal constitutional law accords broad discretion to a state trial court's sentencing decision that falls within statutory limits. Haynes v. Butler, 825 F.2d 921, 923-24 (5th Cir. 1987); see Turner v. Cain, 199 F.3d 437, 1999 WL 1067559, at *3 (5th Cir. 1999) (Table, Text in Westlaw) (because sentence was within Louisiana statutory limits and within trial court's discretion, petitioner failed to state cognizable habeas claim for excessive sentence); accord Dennis v. Poppel, 222 F.3d 1245, 1258 (10th Cir. 2000) (citing Haynes, 825 F.2d at 923-24). If a sentence is within the statutory limits, a federal habeas court will not upset it, unless it is grossly disproportionate to the gravity of the offense. Harmelin v. Michigan, 501 U.S. 957, 1001 (1991); Solem v. Helm, 463 U.S. 277, 291-92 (1983); Rummel v. Estelle, 445 U.S. 263, 271 (1980). "[W]hen a threshold

comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality,'" a court will consider (a) the sentences imposed on other criminals in the same jurisdiction and (b) the sentences imposed for commission of the same offense in other jurisdictions.  Smallwood v. Johnson, 73 F.3d 1343, 1347 (5th Cir. 1996) (quoting Harmelin, 501 U.S. at 1005) (citing McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir. 1992)); United States v. Gray, 455 F. App'x 448, 449 (5th Cir. 2011); United States v. Thomas, 627 F.3d 146, 160 (5th Cir. 2010), cert. denied, 131 S. Ct. 2470 (2011).

If the sentence is not "grossly disproportionate" in the first instance, however, the inquiry is finished.  United States v. Gonzales, 121 F.3d 928, 942 (5th Cir. 1997), overruled in part on other grounds, United States v. O'Brien, 560 U.S. 218, __, 130 S. Ct. 2169, 2180 (2010) (as recognized in United States v. Johnson, 398 F. App'x 964, 968 (5th Cir. 2010)).  As the Supreme Court has noted, successful proportionality challenges outside the context of capital punishment are "exceedingly rare" and constitutional violations are sustained in only "extreme" or "extraordinary" cases.  Ewing v. California, 538 U.S. 11, 22 (2003) (quotation and citations omitted); Lockyer v. Andrade, 538 U.S. 63, 73, 77 (2003) (quotation and citations omitted).  Bernuchaux fails to establish that his sentence is grossly disproportionate.  Harmelin, 501 U.S. at 965-66; Rummel, 445 U.S. 271.

The <u>consecutive</u> nature of the sentence is Bernuchaux's principal complaint.  In its "Reasons for Sentencing," the trial court thoroughly evaluated Bernuchaux's felony offender status, social history, employment, age, and statements, together with victim statements, and character reference letters.  However, the court found "undue risk . . . that this defendant would commit another crime," requiring correctional treatment in a custodial environment.  Considering the sentencing factors set forth in La. Code Crim. P. art. 894.1, the court also found that:

> (2)    The offender knew or should have known that the victims of the offense were particularly vulnerable or incapable of resistance due to their youth, advanced age, disability or ill health.
>
> (4)    The offender used his or her position or status to facilitate the commission of the offenses.
>
> (9)    The offense resulted in significant permanent injury or significant economic loss to the victim or his family.
>
> (11)   The offenses involved multiple victims or incidents for which separate sentences have not been imposed.
>
> (12)   The offender was persistently involved in similar offenses not already considered as criminal history or as part of a multiple offender adjudication.

The court was particularly concerned with Bernuchaux's use of "his position of control or supervision over these victims and their mothers to satisfy his sexual desires, . . . the deep psychological impact on his victims" . . . [and that he] "preyed on young vulnerable children and their families. . ." The sentencing court noted that Bernuchaux's crimes occurred during an 18-year time span: "Had the petitioner been caught and

- 35 -

convicted at the time of each of these offenses, he now would be facing a life sentence as a multiple offender."[54]

The court's imposition of consecutive sentences, given the number of victims, the long period of time during which the crimes occurred, and the other considerations noted by the court was well within a trial court's sentencing discretion under Louisiana law. State v. Johnson, 962 So.2d 1126 (La. App. 2nd Cir. 2007). While concurrent rather than consecutive sentences may be usual when convictions arise from a single course of criminal conduct, State v. Morgan, 472 So.2d 934, 939 (La. App. 1st Cir. 1985); La. Code Crim. P. art. 883,[55] Bernuchaux's crimes were a series of acts against different victims posing a longstanding and continuing risk to public safety, not a single criminal event. Given the trial court's thorough explanation and evaluation of the sentencing reasons and the fact that the sentences as to each count were well within the statutory range, Bernuchaux fails to show that he had a reasonable likelihood of prevailing on an excessive sentence claim on appeal. His appellate counsel's performance in this regard

_____

[54]State Rec. Vol. 1 of 7, Reasons for Sentencing, November 17, 2009.

[55]La. Code Crim. P. art. 883 provides, in pertinent part: If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently.

was not deficient, and the denial of this claim by the state courts is not contrary to or an unreasonable application of <u>Strickland</u>.

As to appellate counsel's alleged failure to "more strongly argue" that the trial court erred in denying a motion to sever,  Bernuchaux provides no specifics as to what additional arguments counsel should have made on his claim.  Regardless of the alleged "perfunctory" nature of the appellate brief,[56] the Louisiana First Circuit thoroughly reviewed the claim and concluded that the offenses were properly joined under La. Code Crim. P. Art. 493 and that no party was prejudiced by the joinder pursuant to La. Code Crim. P. art. 495.1.  Notably, the Louisiana First Circuit considered all of the same factors vital to determining whether a severance is required.[57]

Bernuchaux fails to show how he was prejudiced, as required by <u>Strickland</u>, by any deficiency in counsel's brief on appeal. He does not demonstrate that any different presentation of the claim that the trial court erred in denying the motion for severance would have been more favorably received by the appellate court. He thus fails to show

---

[56]Record Doc. No. 1-1, Memorandum in Support of Petition at p. 24.

[57]<u>See</u> <u>State v. Allen</u>, 677 So.2d 709, 713 (La. App. 1st Cir. 1996), which requires consideration of the following factors concerning severance: whether the jury would be confused by the various counts; whether the jury would be able to segregate the various charges evidence; whether the defendant could be confounded in presenting his various defenses; whether the crimes charged would be used by the jury to infer criminal disposition; and whether, considering the nature of the offenses, the charging of several crimes would make the jury hostile. <u>See</u> <u>also</u> <u>State v. Washington</u>, 386 So.2d 1368 (La. 1980) (same factors). State Rec. Vol. 4 of 7 contains a copy of the Louisiana First Court of Appeal's decision on direct appeal, <u>State v. Bernuchaux</u>, 2010 WL 3526517 (La. App. 1 Cir. 2010).

that the state court's decision denying relief on his claim of ineffective appellate assistance is contrary to or an unreasonable application of <u>Strickland</u>. 28 U.S.C. §2254(d)(2).

## VIII.  <u>JUROR MISCONDUCT/IMPARTIALITY (CLAIM NO. 3)</u>

Bernuchaux argues that Mindy Autin, Juror No.10, failed to reveal during voir dire examination that she had a personal relationship with Bernuchaux. According to Bernuchaux, Autin "was a frequent visitor at the Bernuchaux residence while a child" and, as an adult, lived only a few doors away from him.  He also claims, without providing any evidentiary support, that Autin's brother was a former Bernuchaux employee who was terminated for stealing.  Bernuchaux claims that, due to Autin's juror misconduct in failing to reveal vital information, he was deprived of a fair and impartial trial.[58]

The State responds that Bernuchaux's claim is based upon the unsworn affidavit of Evelyn Hue, which, even if accepted as true, indicates only that when Autin was ten (10) years old, she accompanied Hue's daughter to swim in Bernuchaux's pool 18 years before trial.  The State argues that Bernuchaux fails to establish that he and Autin actually met or had any sort of relationship, nor does he prove that Autin had any actual or implied bias against him.

---

[58]Record Doc. No. 1-1, Memorandum in Support of Petition at pp. 28-29.

The Sixth and Fourteenth Amendments guarantee a criminal defendant in state court the right to an impartial jury.  Mu'Min v. Virginia, 500 U.S. 415, 443, n. 1 (1991) (citing Ristaino v. Ross, 424 U.S. 589, 595, n. 6 (1976));  King v. Lynaugh, 850 F.2d 1055, 1058 (5th Cir. 1988). "One touchstone of a fair trial is an impartial trier of fact, a 'jury capable and willing to decide the case solely on the evidence before it.'"  See McDonough Power Equipment, Inc. v. Greenwood, 464 U.S. 548, 554 (1984) (citing Smith v. Phillips, 455 U.S. 209, 217 (1982)) (due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to determine the effect of any prejudicial occurrences); Irvin v. Dowd, 366 U.S. 717, 722 (1961) (juror who has formed an opinion cannot be impartial; due process requires verdict to be based only upon the evidence developed at trial.)  Voir dire examination protects fair trial rights by exposing potential juror's possible biases, both known and unknown. Demonstrated bias in the responses to voir dire questions may result in a juror being excused for cause; hints of bias insufficient to strike for cause may assist parties in exercising their peremptory challenges.  Greenwood, 464 U.S. at 554.

The standard for determining if a juror was biased is "whether the prospective 'juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'"  Soria v. Johnson, 207 F.3d 232, 242 (5th Cir. 2000)(quoting Wainwright v. Witt, 469 U.S. 412, 424 (1985)).  A juror is

- 39 -

not biased if he can "lay aside his impression or opinion and render a verdict based on the evidence presented in court." Irvin, 366 U.S. at 723.  While inclusion of a biased person on a criminal jury effectively denies the defendant the right to a fair trial, U.S. v. Scott, 854 F.2d 697, 698 (5th Cir.1988), only extreme situations justify such a finding. Andrews v. Collins, 21 F.3d 612, 620 (5th Cir.1994), cert. denied, 513 U.S. 1114 (1995). Such extreme situations might include revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction. Andrews, 21 F.3d at 620 (citing Smith, 455 U.S. at 222); Solis v. Cockrell, 342 F. 3d 392, 396 (5th Cir. 2003), cert. denied, 540 U.S. 1151 (2004). Juror bias may be actual or implied; i.e., it may be bias in fact or bias conclusively presumed as a matter of law. Solis, 342 F. 3d at 395; Brooks v. Dretke, 444 F.3d 328, 329-30 (5th Cir. 2006). A court may find implied bias as a matter of law only in extreme situations where "no reasonable person could not be affected in his actions as a juror and in which the Constitution refuses to accept any assurances to the contrary." Brooks, 444 F.3d at 331.

The United States Court of Appeals for the Fifth Circuit has explained the deferential standard of review under the AEDPA in the context of a claim of juror bias as follows:

> Juror bias <u>vel</u> <u>non</u> is a finding of fact. Pursuant to AEDPA, "a determination of a factual issue made by a state court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by <u>clear and convincing evidence</u>." 28 U.S.C. § 2254(e)(1) (emphasis added).   Accordingly... to succeed on his juror-bias claim, [petitioner] must show "the adjudication of the claim [on the merits in State court proceeding] ... resulted in a decision that was based on an <u>unreasonable</u> determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2) (emphasis added).

<u>White v. Quarterman</u>, 275 F. App'x 380, 381 (5th Cir. 2008) (<u>citing</u> <u>Patton v. Yount</u>, 467 U.S. at 1036; <u>Virgil v. Dretke</u>, 446 F.3d 598, 610 n.52 (5th Cir. 2006)) (second ellipsis in original).

Bernuchaux asserted this claim in his state past-conviction proceedings. Oral argument was held on January 17, 2012.  With the exception of Evelyn Hue's  unsworn statement, no other evidence or testimony was offered to support the claim.[59] The state district court stated:

> If you take the allegation with regard to the juror as being true, that there was one contact at the age of 10, I don't think

---

[59]Petitioner asserts, in his Memorandum in Support of Petition, that he believed the matter was set for a "pre-trial status" hearing in the state district court rather than for an evidentiary hearing. He complains that the state district court erred in that the court should have set the matter on another date for an evidentiary hearing. Petitioner's complaint, however, cannot be addressed by this court. As a general rule, "[i]nfirmities in state habeas proceedings do not constitute grounds for federal habeas relief." <u>Kinsel v. Cain</u>, 647 F.3d 265, 274 n. 32 (5th Cir. 2011); <u>Moore v. Dretke</u>, 369 F.3d 844, 846 (5th Cir. 2004); <u>Henderson v. Cockrell</u>, 333 F.3d 592, 606 (5th Cir.), <u>cert. denied</u>, 540 U.S. 1163, 124 S.Ct. 1170, 157 L.Ed.2d 1208 (2004); <u>Trevino v. Johnson</u>, 168 F.3d 173, 180 (5th Cir.1999); <u>Hallmark v. Johnson</u>, 118 F.3d 1073, 1080 (5th Cir.1997); <u>Duff-Smith v. Collins</u>, 973 F.2d 1175, 1182 (5th Cir.1992). This is because "an attack on the state habeas proceeding is an attack on a proceeding collateral to the detention and not the detention itself." <u>Rudd v. Johnson</u>, 256 F.3d 317, 320 (5th Cir. 2001).

that rises to the point of a constitutional violation, so I am
going to deny you a hearing on that."[60]

The court also denied the claim on the merits, along with the other post-conviction

claims, at the conclusion of the hearing.[61] The state district court's finding that there was

insufficient evidence to find that Autin was partial or biased is a finding of fact entitled

to deference by this court.

Applying the foregoing standards, I find that Bernuchaux has failed to establish

that the state court's rejection of his jury bias claim was an unreasonable finding of fact

or application of Supreme Court precedent.  The statement of Evelyn Hue[62] fails to prove

that Autin was actually or impliedly biased as a matter of law.[63] The mere fact that juror

Autin, at age 10, may have gone swimming in Bernuchaux's pool does not constitute an

"extreme situation" where the juror had "a close relationship with one of the important

actors in the case or was otherwise emotionally involved in the case. . ." Solis, 342 So.

2d at 398-99.  There is no evidence that Autin even recognized Bernuchaux as someone

---

[60]State Rec. Vol. 5 of 7, Transcript of Proceedings, January 17, 2012 at pp. 11-12.

[61]Transcript of Proceedings, January 17, 2012 at p. 19.

[62]Record Doc. No. 1-3 at p. 47. Hue's statement was not sworn before a notary and is dated more than 2 ½ years ago.

[63]Although the Supreme Court has never explicitly upheld a claim of implied bias, in Smith v. Phillips, 455 U.S. 209, 222 (1982)(O'Connor, J., concurring), Justice O'Connor suggested that the Court has implicitly done so in reversing a conviction in Leonard v. United States, 378 U.S. 544 (1964). The Fifth Circuit subsequently affirmed that the doctrine of implied bias is "clearly established federal law as determined by the Supreme Court" in Brooks, 444 F.3d at 329.

whom she had once visited.  See, e.g., Dowell v. Clark, 2011 WL 5326166 (C.D. Calif. 2011) (no evidence that juror knew she was a prior acquaintance of petitioner's and petitioner himself did not recognize the juror until final day of trial; thus, no finding of juror misconduct);  Andrew v. Collins, 21 F. 3d at 620-21 (court refused to impute bias to a juror when there was a "tenuous relationship" between juror and defendant and no evidence to suggest juror knew he had, at one time, been related to the victim.) The record contains no evidence to suggest that Autin intentionally failed to disclose relevant information during voir dire.  See United States v. Bishop, 264 F.3d 535 (5th Cir. 2001) (no violation of due process when there was no evidence that juror, who believed her prior conviction was deferred, intentionally concealed her prior conviction during voir dire; juror's mistaken but honest belief does not suggest bias.)

In addition, there is no evidence that Bernuchaux himself recognized the juror and informed his lawyer.  Similarly, Bernuchaux offers nothing, such as employment records, termination papers or supporting affidavits, to support his conclusory allegation that Autin's brother was fired from employment by the defendant.[64]

---

[64]Although the State asserts that the facts regarding Autin's brother's termination are not "of record," these allegations were raised in a conclusory fashion during the state district court's hearing of January 17th, 2012. State Rec. Vol. 5 of 7, Transcript of Proceedings, January 17, 2012 at p. 6, and in the post-conviction writ applications filed in the Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court. Copies of these applications can be located in State Rec. Vol. 5 of 7.

The transcript of the voir dire examination of Autin reveals no actual bias.  Autin, a mother of three children, was asked whether a desire to protect children would influence her decision in the case, and she responded that it would not.  She was also asked whether she could follow the court's instructions and return a fair judgment, and she indicated that she could. When all jurors were asked if they had any other reason why they could not be fair and impartial, Autin did not raise her hand.[65] Thus, Bernuchaux fails to establish that Autin demonstrated any actual bias against him.

For the foregoing reasons, the evidence submitted by Bernuchaux falls substantially short of  establishing juror misconduct or partiality, and denial of relief on this claim by the state courts was not clearly contrary to Supreme Court precedent or unreasonable factfinding.  Federal habeas relief is, therefore, unwarranted on this claim.

## IX.   UNCONSTITUTIONALITY OF LA. REV. STAT. §14:81 (CLAIM NO. 4)

Bernuchaux's final claim is that La. Rev. Stat. §14.81, the criminal statute under which he is convicted, is void for vagueness.   At the time of commission of these offenses, that statute provided in pertinent part:

> Indecent behavior with juveniles is the commission of any of the following acts with the intention of arousing or gratifying the sexual desires of either person:
>> (1) Any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there

---

[65]State Rec. Vol. 2 of 7, Trial Transcript, at pp. 103, 106 and 114.

is an age difference of greater than two years between the two persons. Lack of knowledge of the child's age shall not be a defense...[66]

Bernuchaux argues that the words "lewd" and "lascivious" are vague and indefinite terms.  Recognizing that the Louisiana Supreme Court in State v. Prejean, 45 So.2d 627, 629-30 (1950) and more recently in State v. Interiano, 868 So.2d 9, 16 (La. 2004), has already found those words in the statute not constitutionally vague, however, Bernuchaux asserts that, because of his unique in loco parentis relationship with the victims, the statute as applied to him is vague.  Specifically, Bernuchaux claims that, while acts such as "kissing, bathing, sharing a bed, and demonstrating masturbation practices may be clearly lewd and lascivious where such activity concerns a stranger and a juvenile," such activity ceases to be criminal when a parent or caretaker is engaging in the same activities with the juvenile.[67]

Bernuchaux asserted this claim during his post-conviction proceedings in the state courts, and it was denied without specific written reasons. For AEDPA purposes, whether a statute is unconstitutional and void for vagueness is a question of law, U.S. v. Coleman, 609 F.3d 699 (5th Cir. 2010), thus Bernuchaux must show that the state court's decision to deny the claim was contrary to Supreme Court law. 28 U.S.C. §2254(d)(1).

---

[66]La. Rev. Stat. §14:81(emphasis added).

[67]Record Doc. 1-1, Memorandum in Support of Petition at p. 33.

The void-for-vagueness doctrine requires that a penal statute must define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.   Hill v. Colorado, 530 U.S. 703, 732 (2000); Kolender v. Lawson, 461 U.S. 352, 356 n.4 (1983); Village of Hoffman Estates v. Flipside, 455 U.S. 489 (1982); Smith v. Goguen, 415 U.S. 566(1974); Grayned v. City of Rockford, 408 U.S. 104, 108 (1972); Papachristou v. City of Jacksonville, 405 U.S. 156 (1972); Connally v. General Construction Co., 269 U.S. 385 (1926). An enactment is void for vagueness under the Due Process Clause of the Fourteenth Amendment if it fails to draw reasonably clear lines between lawful and unlawful conduct. Goguen, 415 U.S. at 574-78. See Bouie v. City of Columbia, 378 U.S. 347, 350 (1964) (under the Constitution, "a criminal statute must give fair warning of the conduct that makes it a crime.") A statute is void for vagueness only if it is "impermissibly vague in all its applications." Hoffman, 455 U.S. at 495-96.  If a defendant's conduct falls "squarely within the 'hard core' of the statute's proscriptions," a challenge to the vagueness of the statute will not lie. Broderick v. Oklahoma, 413 U.S. 601, 608 (1973); Hoffman, 455 U.S. at 495; Parker v. Levy, 417 U.S.  733, 756 (1974).

To determine whether a state statute is too vague and indefinite to constitute valid legislation, a federal habeas court "'must take the statute as though it read precisely as

the highest court of the State has interpreted it.'" <u>Kolender</u>, 461 U.S. at 357 n.4 (<u>citing</u>

<u>Wainwright v. Stone</u>, 414 U.S. 21, 22-23 (1973)).

As to the terms "lewd" and "lascivious" in La. Rev. Stat. §14:81, the Louisiana

Supreme Court has found:

> 'The words 'lewd' and 'lascivious' found in the statute are
> not vague and indefinite. On the contrary, they have a well
> defined, well understood, and generally accepted meaning,
> and by their use an accused is informed of the nature of the
> act he is alleged to have committed. The word 'lewd' means
> lustful, indecent, lascivious, and signifies that form of
> immorality which has relation to sexual impurity or
> incontinence carried on in a wanton manner. The word
> 'lascivious' means tending to excite, lust, lewd, indecent,
> obscene, relating to sexual impurity, tending to deprave the
> morals in respect to sexual relations. See Black's Law
> Dictionary (Deluxe Ed.). Moreover, we are entitled to study
> these words in their context, and, when we do this, there can
> be no possible doubt as to their import here. These words are
> used in the statute to describe an act done 'with the intention
> of arousing or gratifying the sexual desires,' so that, by the
> bill of information as worded, the accused is fully informed
> of the nature and cause of the offense charged, that is, that he
> is charged with having done an act upon the person of a
> juvenile which is lustful, obscene, indecent, tending to
> deprave the morals in respect to sexual relations, and relating
> to sexual impurity or incontinence carried on in a wanton
> manner.

<u>State v. Prejean</u>, 45 So.2d 627 (La. 1950).  <u>See</u> <u>also</u> <u>State v. Interiano</u>, 868 So.2d 9, 15

(La. 2004); <u>State v. Holstead</u>, 354 So.2d 493, 497-98 (La. 1977).

As mentioned above, the evidence at trial included that Bernuchaux on numerous occasions grabbed and groped victims' genitals, insisted that they bathe together, and attempted to perform oral sex or demonstrate how to masturbate. This conduct clearly comes within the Louisiana Supreme Court's, or any civilized person's, definition of "lewd" and "lascivious."  Thus, the state court was not unreasonable in rejecting Bernuchaux's strained claim that the statute's terminology was vague as applied to his conduct as a caretaker of young boys.

The primary flaw in this and Bernuchaux's other arguments is his mistaken belief that there was ever any persuasiveness in his in loco parentis defense as applied to his conduct.  His abuse of the young victims in this case was exactly the type of conduct the statute intended to prohibit, whether by parents or other adults.  The statute as defined by state law was sufficient to put any "reasonable person" on notice of the proscribed conduct.  Since his actual criminal activity was clearly within the scope of the statute, Bernuchaux cannot be now heard to complain that the statute was vague.  Broderick, 413 U.S. at 608.

Bernuchaux fails to establish that the state court's decision that La. Rev. Stat. §14:81 was not unconstitutionally vague was clearly contrary to or an unreasonable application of United States Supreme Court precedent. He is  not entitled to habeas relief on this claim.

- 48 -

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that the application for federal habeas corpus relief filed on behalf of petitioner, Kim Bernuchaux, for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[68]

New Orleans, Louisiana, this ___2nd___ day of August, 2013.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[68]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

- 49 -